UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **SAUCE IT UP, L.L.C.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER: 06-4814** |
| **MURPHY OIL USA, INC.** | * | **SECTION "L" (2)** |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

  This post-Katrina oral contract dispute between Plaintiff Sauce It Up, L.L.C. d/b/a Café Freret and Defendant Murphy Oil USA, Inc. came before the Court for trial without a jury on February 6 and 7, 2008. Following the bench trial, the Court allowed the parties to make their closing arguments in writing. Having received and considered the parties' closing arguments, and having reviewed the evidence presented at trial, including all exhibits and the testimony of all witnesses, the Court now issues its findings of fact and conclusions of law pursuant to Rule 52(a) of the *Federal Rules of Civil Procedure*.[1]

---

[1] To the extent that a finding of fact constitutes a conclusion of law, the Court adopts it as such. And to the extent that a conclusion of law constitutes a finding of fact, the Court also adopts it as such.

1

**FINDINGS OF FACT**

(I)

On August 29, 2005, Hurricane Katrina made landfall on the Louisiana/Mississippi border, resulting in one of the most devastating natural disasters ever to occur in the United States. As the storm passed over southeastern Louisiana, the levee system intended to protect St. Bernard Parish was breached in multiple locations, inundating nearly all of the homes and businesses in the area with massive flood waters. Among those properties impacted by the storm and flood waters was the Murphy Oil refinery in Meraux, Louisiana.

(II)

Beginning almost immediately after the storm, management personnel in Murphy's corporate headquarters in El Dorado, Arkansas began meeting to plan both the repair of its refinery's infrastructure and the remediation of the oil spill that occurred during the storm.[2]

(III)

Because most of its refinery workers were rendered homeless by Hurricane Katrina, and due to the lack of available groceries, restaurants, and food outlets in St. Bernard Parish, Murphy sought to provide the essential needs for its employees, including housing and food, so that they could return to work and assist in the restoration of the refinery. Murphy designated Susan Hogg, its crude oil trading manager, to oversee the procurement of these essential needs following the storm.

---

[2] For more information concerning the oil spill, see *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) (approving a class action settlement of claims arising from the spill).

(IV)

With respect to providing food for Murphy's employees, Hogg sought to locate a caterer that could cook and serve three meals a day on-site at the refinery. Hogg contacted multiple people for caterer recommendations, including Landon "Snooky" Alexander of Gulf Inland Marine Services, Inc., an individual with whom she had previously dealt on other matters. Alexander recommended that Hogg contact Carl Guidroz, the proprietor of Sauce It Up, L.L.C., which does business as Café Freret, a neighborhood restaurant in uptown New Orleans.

(V)

Hogg and Guidroz spoke over the telephone on numerous occasions in the first weeks of September 2005 concerning whether Sauce It Up could provide disaster catering services at Murphy's refinery.

(VI)

On or about September 14, 2005, Hogg and Guidroz orally agreed over the telephone that Sauce It Up would provide catering services at the refinery beginning in the middle of October 2005, for the price of $55.00 per person, per day. The start date was to coincide with the arrival of a galley barge containing a commercial kitchen, for which Hogg had separately contracted and which would be located next to the refinery on the Mississippi River.

(VII)

In a separate written agreement dated September 27, 2005, Guidroz agreed to pay Gulf Inland Marine a weekly brokerage fee of 5% of the gross invoiced revenues for the catering contract with Murphy.

(VIII)

On or about September 30, 2005, Hogg contacted Guidroz to inquire whether Sauce It Up would be able to start providing catering services at the refinery earlier than had previously been discussed. During this conversation, Hogg and Guidroz agreed to modify their previous agreement by moving up the start date to October 3, 2005. Sauce It Up was to temporarily operate out of a double-wide modular trailer at the refinery until the barge became available.

(IX)

Murphy wired an advance payment of $30,000 to Sauce It Up on September 30, 2005.

(X)

Guidroz arrived at the refinery with five employees on Monday, October 3, 2005, and served lunch and dinner that day. Knowing that the commercial kitchen on the barge was not yet ready, Guidroz procured a commercial smoker and brought it with him to the refinery.

(XI)

For the next six days, Sauce It Up served breakfast, lunch, and dinner at the refinery. Unable to prepare a hot breakfast on the smoker, Guidroz and his staff served pre-packaged pastries and coffee for breakfast. For lunch and dinner, Guidroz and his staff primarily served chicken, hamburgers, and hot dogs off of the smoker, with various other items being prepared in the double-wide trailer from time to time.[3]

---

[3] There was conflicting testimony at trial regarding the quality of Sauce It Up's food and service. Some witnesses testified that the food and service was good. Others complained that the food was either undercooked or overcooked, that it lacked variety, and that it was often served late. But in light of the conclusions below, the Court need not, and will not, make a finding concerning the quality of Sauce It Up's food and service.

(XII)

On Monday, October 10, 2005, Hogg informed Guidroz that Sauce It Up's services would no longer be needed at the refinery. That day, Guidroz and his employees served their final meals and were then escorted off of Murphy's property that evening.

(XIII)

A new caterer, Mark Benfatti, began working at the refinery on October 11, 2005. Prior to Hurricane Katrina, Benfatti was the proprietor of four local restaurants, including Arabi Diner.

(XIV)

On October 12, 2005, Sauce It Up sent Murphy an invoice for $81,003, reflecting the cost of providing catering services at the refinery from October 3, 2005 through October 10, 2005.

(XV)

Having previously advanced $30,000 to Sauce It Up, Murphy wired the balance of $51,003 to Sauce It Up on October 21, 2005.

(XVI)

On July 31, 2006, Sauce It Up filed the instant suit against Murphy in the 34th Judicial District Court for the Parish of St. Bernard, State of Louisiana, seeking to recover approximately nine months worth of profits it allegedly lost as a result of Murphy's alleged premature termination of the contract. On August 25, 2006, Murphy removed this case to federal court and subsequently filed a counterclaim seeking (1) a declaration that the contract was void *ab initio* due to alleged misrepresentations by Guidroz during the negotiations with Hogg and (2) recovery of all amounts paid to Sauce It Up.

**CONCLUSIONS OF LAW**

(I)

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

(II)

Louisiana substantive law provides the rules of decision in this case.

(III)

"A party who demands performance of an obligation must prove the existence of the obligation." La. Civ. Code Ann. art. 1831. Thus, in this case, Sauce It Up "must prove the facts supporting the existence of [the oral] contract by a preponderance of the evidence." *Sun Drilling Prods. Corp. v. Rayborn*, 798 So. 2d 1141, 1149 (La. App. 4 Cir. 10/3/01).

(IV)

"Louisiana Civil Code Article 1846 requires that an oral contract in excess of $500 must be proven by at least one witness and other corroborating evidence." *Lakewood Estates Homeowner's Ass'n, Inc. v. Markle*, 847 So. 2d 633, 637-38 (La. App. 4 Cir. 4/20/03). "To establish a prima facie case for an oral contract greater than $500 the plaintiff must prove the existence and terms of said contract by at least one credible witness and other corroborating evidence." *Executive Recruitment, Inc. v. Reed & Carnick Pharms.*, 474 So. 2d 473 (La. Ct. App. 1985) (emphasis added). "A party may offer his own testimony in support of a claim of an oral contract . . . but must show other circumstances which corroborate his claim. Although corroboration is required, only general corroboration must be shown, not independent proof of every detail of his testimony. . . . The corroborating circumstances that are required must come from a source other than the plaintiff." *Lakewood,* 847 So. 2d at 637-38.

(V)

A party's consent to a contract "may be vitiated by error, fraud, or duress." La. Civ. Code Ann. art. 1948. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ. Code Ann. art. 1949. "Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation." La. Civ. Code Ann. art. 1950.

(VI)

The Court concludes that Sauce It Up has satisfied its burden under Article 1846 of proving the existence of an oral contract with Murphy for disaster catering. Both Guidroz and Hogg testified to the existence of an oral agreement between the parties regarding Sauce It Up's provision of catering services at the refinery following Hurricane Katrina.

(VII)

However, the Court concludes that Sauce It Up has failed to satisfy its burden under Article 1846 of proving that the contract between the parties was to exist for any specific duration. At trial, Guidroz and his employees testified that the term of the contract was thirty-nine weeks. In several pretrial letters and pleadings, counsel for Murphy suggested that the term of the contract may have been three months. At trial, Hogg testified that the term was "month-to-month," but that either party could terminate the relationship at any time. Thus, although various witnesses testified to varying terms, none of this testimony is supported by "other

corroborating circumstances." La. Civ. Code Ann. art. 1846.[4] Accordingly, Sauce It Up having failed to satisfy its burden of proof in this respect, the Court concludes that no specific duration was agreed upon and thus that the contract between Sauce It Up and Murphy was terminable at will. *See* La. Civ. Code Ann. art. 2024 ("A contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party.").

(VIII)

Furthermore, although Guidroz received notice of the contract's termination the same day he and his employees were escorted off of Murphy's property, the Court finds that Sauce It Up has failed to satisfy its burden of proving (1) that such short notice was unreasonable in this case and (2) that it suffered any "unwarranted injury" as a result. *See* La. Civ. Code Ann. art. 2024 Revision Comment (e).

(IX)

Finally, the Court concludes that Murphy's consent to the contract in this case is not vitiated by any alleged misrepresentations made by Guidroz during the negotiations. The Court finds that both Guidroz and Hogg spoke informally about various things during the course of many telephone conversations, including Guidroz's capabilities and experience and what would be expected of him at the refinery. However, the Court finds that Murphy has failed to demonstrate that there was error regarding "a cause without which the obligation would not have

---

[4] Although multiple Sauce It Up employees testified that they understood the term of the contract to be thirty-nine weeks, these witnesses also testified that the "source" of this knowledge was Guidroz himself. Thus, this testimony is not corroborating as it does not arise "from a source other than the plaintiff." *Lakewood,* 847 So. 2d at 638; *see also Hilliard v. Yarbrough*, 488 So. 2d 1038, 1042 (La. Ct. App. 1986) (quoting *Cormier v. Le Blanc*, 8 Mart. (n.s.) 457, 1830 WL 2390 (La. 1830), for the proposition that the corroborating circumstances must appear *aliunde*, that is, from elsewhere or from another source).

been incurred." La. Civ. Code Ann. art. 1949.  Indeed, in the hectic and uncertain days immediately following Hurricane Katrina, both Guidroz and Hogg were eager and anxious to finalize the contract in this case.  But the Court is not convinced that any representations were made by either party that were so misleading such that this contract was void *ab initio*.  The evidence simply does not support such a conclusion.

## CONCLUSION

Accordingly, based on the foregoing findings of fact and conclusions of law, an appropriate judgment will issue dismissing with prejudice both Sauce It Up's claims and Murphy's counterclaims.  Because each party has made claims in this case, and because all such claims have been dismissed, the parties shall each bear their own costs.

New Orleans, Louisiana, this 25th day of February, 2008.

_____
UNITED STATES DISTRICT JUDGE

9